1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

DISTRICT COUNCIL 16 NORTHERN
CALIFORNIA HEALTH AND WELFARE
TRUST FUND, et al.,

              Plaintiffs,

      v.

ROBERT CHARLES SINNOCK,
individually and doing business as
NEIGHBORHOOD GLASS NETWORK,

              Defendant.

Case No. 19-cv-08262-LB

**ORDER GRANTING THE
PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT**

Re: ECF No. 48

## INTRODUCTION

The plaintiffs — benefits plans and trustees — sued the defendant for failing to make

contributions to the plans required by the parties' collective bargaining agreements, the trust

agreements, the Labor Management Relations Act (LMRA), and the Employee Retirement Income

Security Act of 1974 (ERISA). The defendant did not appear in the case (although all parties

consented to the court's jurisdiction). The Clerk of Court entered the defendant's default, and the

plaintiffs moved for default judgment. The court grants the motion and enters default judgment for

the plaintiffs of $53,223.08 for unpaid contributions, liquidated damages, interest through March

17, 2021 (and daily simple interest at five percent thereafter), attorney's fees, and costs.

1

**STATEMENT**

2

**1.  The Parties**

3

The plaintiffs are "employee benefit plans" as defined in ERISA § 3(3), 29 U.S.C. § 1002(3),

4

"multiemployer plans" as defined in ERISA §§ 3(37) and 4001(a)(3), 29 U.S.C. §§ 1002(37) &

5

1301(a)(3)), and trustees authorized to bring this action on behalf of the plans under ERISA §

6

502(a)(3), 29 U.S.C. § 1132(a)(3).[1] Mr. Sinnock, individually and doing business as

7

Neighborhood Glass Network, is an employer as defined in ERISA § 3(5), 29 U.S.C. § 1002(5),

8

and NLRA § 2(2), 29 U.S.C. § 152(2).[2]

9

10

**2.  The Agreements**

11

The defendant signed and is a party to the two bargaining agreements (one for July 1, 2011 to

12

June 30, 2014 and the second for July 1, 2015 to June 30, 2018). The bargaining agreements

13

incorporate the trust agreements, thus binding the defendant to the terms and conditions of the

14

trust agreements.[3] The Funds are third-party beneficiaries of the bargaining agreements.[4]

15

Employers must make contributions to the Funds based on the hours that their employees work.

16

The contributions are due by the 15th day of the month for the employees' work the previous

17

month.[5] Contributions are delinquent if the Funds do not receive them by the end of the month.[6]

18

19

20

[1] Compl. – ECF No. 1 at 2 (¶¶ 1, 4). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

21

[2] *Id.* (¶ 3).

22

[3] Christophersen Decl. – ECF No. 49 at 2 (¶¶ 2–5); *Id.* at 3 (¶ 7); Bargaining Agreement 2011–2014 (BA1), Ex. A to *id.* – ECF No. 49-1 at 3 (art. 28); Signatures, Ex. B to *id.* – ECF No. 49-2 at 1; Bargaining Agreement 2015–2018 (BA2), Ex. C to *id.* – ECF No. 49-3 at 3 (art. 28); Signatures, Ex. D to *id.* – ECF No. 49-4 at 1.

23

24

[4] Christophersen Decl. – ECF No. 49 at 3 (¶ 6); BA1, Ex. A to *id.* – ECF No. 49-1 at 3 (art. 28); BA2, Ex. C to *id.* – ECF No. 49-3 at 3 (art. 28).

25

[5] Christophersen Decl. – ECF No. 49 at 3 (¶ 8); BA1, Ex. A to *id.* – ECF No. 49-1 at 4 (art. 28, § D(2)); BA2, Ex. C to *id.* – ECF No. 49-3 at 4 (art. 28, § D(2)); H&W Trust Agreement, Ex. E to *id.* – ECF No. 49-5 at 7–8 (¶ III, §§ A–B).

26

27

[6] Christophersen Decl. – ECF No. 49 at 3 (¶ 8); BA1, Ex. A to *id.* – ECF No. 49-1 at 4 (art. 28, § D(2)); BA2, Ex. C to *id.* – ECF No. 49-3 at 4 (art. 28, § D(2)); H&W Trust Agreement, Ex. E to *id.* – ECF No. 49-5 at 8 (¶ III, § C).

28

United States District Court
Northern District of California

1    The bargaining and trust agreements require employers like the defendant to pay liquidated

2    damages and interest on delinquent contributions.[7]

3    Liquidated damages before a lawsuit is filed are the greater of 10 percent of the delinquent

4    contributions or $150 (with a cap of $750 per month).[8] Otherwise, liquidated damages are 20

5    percent of the delinquent contributions.[9]

6    Interest on delinquent contributions is five percent, calculated from the first day of the month

7    after the month when payment was due.[10] Employers must pay reasonable attorney's fees and

8    other expenses incurred in connection with delinquent payments.[11]

9    The agreements require employers to keep weekly time records for employees and to submit

10   records to the Fund trustees (or their authorized representatives) for examination.[12] If an examination

11   reveals that an employer is not making full and prompt payments of all sums owing, the employer

12   must pay the Funds the costs (including audit fees) reasonably incurred in the examination.[13]

---

[7] Christophersen Decl. – ECF No. 49 at 3 (¶ 8); BA1, Ex. A to *id.* – ECF No. 49-1 at 4 (art. 28, § D(2)); BA2, Ex. C to *id.* – ECF No. 49-3 at 4 (art. 28, § D(2)); H&W Trust Agreement, Ex. E to *id.* – ECF No. 49-5 at 8–9 (¶ III, § C(1)–(3)).

[8] Christophersen Decl. – ECF No. 49 at 3–4 (¶ 9); BA1, Ex. A to *id.* – ECF No. 49-1 at 5 (art. 28, § D(3)); BA2, Ex. C to *id.* – ECF No. 49-3 at 5 (art. 28, § D(3)); H&W Trust Agreement, Ex. E to *id.* – ECF No. 49-5 at 8 (¶ III, § C(2)).

[9] Christophersen Decl. – ECF No. 49 at 3–4 (¶ 9); BA1, Ex. A to *id.* – ECF No. 49-1 at 5 (art. 28, § D(3)); BA2, Ex. C to *id.* – ECF No. 49-3 at 5 (art. 28, § D(3)); H&W Trust Agreement, Ex. E to *id.* – ECF No. 49-5 at 8 (¶ III, § C(2)).

[10] Christophersen Decl. – ECF No. 49 at 4 (¶ 10); BA1, Ex. A to *id.* – ECF No. 49-1 at 5 (art. 28, § D(3)); BA2, Ex. C to *id.* – ECF No. 49-3 at 5 (art. 28, § D(3)); H&W Trust Agreement, Ex. E to *id.* – ECF No. 49-5 at 8–9 (¶ III, § C(3)).

[11] Christophersen Decl. – ECF No. 49 at 4 (¶ 11); BA1, Ex. A to *id.* – ECF No. 49-1 at 5 (art. 28, § D(3)); BA2, Ex. C to *id.* – ECF No. 49-3 at 5 (art. 28, § D(3)); H&W Trust Agreement, Ex. E to *id.* – ECF No. 49-5 at 8 (¶ III, § C(2)).

[12] Christophersen Decl. – ECF No. 49 at 4 (¶ 12); BA1, Ex. A to *id.* – ECF No. 49-1 at 7–8 (art. 28, § E); BA2, Ex. C to *id.* – ECF No. 49-3 at 7–8 (art. 28, § E)); H&W Trust Agreement, Ex. E to *id.* – ECF No. 49-5 at 9 (¶ III, § D).

[13] Christophersen Decl. – ECF No. 49 at 4 (¶ 12); BA1, Ex. A to *id.* – ECF No. 49-1 at 8 (art. 28, § E(13)); BA2, Ex. C to *id.* – ECF No. 49-3 at 8 (art. 28, § E(13)); H&W Trust Agreement, Ex. E to *id.* – ECF No. 49-5 at 9 (¶ III, § D).

### 3.  Unpaid Contributions

A third-party auditor examined the defendant's records for the period from October 1, 2013 through December 31, 2018 and determined initially that the defendant owed $29,533.25 in unpaid contributions plus liquidated damages and interest.[14] On November 29, 2017, the auditor sent a notification letter to the defendant asking for documents for the audit.[15] The defendant did not respond to the letter or to the auditor's follow-up calls.[16] On February 22, 2018, the auditor referred the matter to the plaintiffs' legal counsel.[17] Counsel sent the defendant a demand letter, he produced documents, and the auditor completed the audit in July 2019.[18] The auditor ultimately determined that the defendant owed $21,577.10 in unpaid contributions for October 1, 2013 through December 31, 2018.[19]

On July 9, 2019, the auditor sent the defendant a draft audit report and gave him two weeks to dispute the findings in writing.[20] The defendant did not dispute the audit.[21]

On October 8, 2019, the plaintiffs' counsel sent a pre-lawsuit letter to the defendant demanding payment for the $21,557.10 in unpaid contributions, liquidated damages (then calculated at $750), accrued interest at five percent, and the audit fees.[22] The defendant did not respond. The plaintiffs' counsel sent the defendant a second demand letter on October 24, 2019.[23]

The table below shows the liquidated damages at 20 percent and interest at 5 percent. (Because the July 2018 payment was late, liquidated damages are 10 percent.) It shows an overpayment

---

[14] Dominguez Decl. – ECF No. 50 at 1–2 (¶¶ 2,7); Christophersen Decl. – ECF No. 49 at 4 (¶ 13).

[15] Dominguez Decl. – ECF No. 50 at 2 (¶ 4).

[16] *Id.*

[17] *Id.* (¶ 5).

[18] *Id.* at 2–3 (¶¶ 6, 8).

[19] Mot. – ECF No. 48 at 10–11; Dominguez Decl. – ECF No. 50 at 2 (¶ 6); Lindquist Report, Ex. A to *id.* – ECF No. 50-1 at 4.

[20] Dominguez Decl. – ECF No. 50 at 3 (¶ 8).

[21] *Id.*

[22] Minser Decl. – ECF No. 51 at 3 (¶ 9); 10/8/19 Letter, Ex. D to *id.* – ECF No. 51-4 at 1–2.

[23] Minser Decl. – ECF No. 51 at 3 (¶¶ 9–10); 10/24/19 Letter, Ex. E to *id.* – ECF No. 51-5 at 1–9.

United States District Court
Northern District of California

credit of $3,580.20 and the testing (or audit) fees.[24] It reflects the plaintiffs' request for $21,118.00 in attorney's fees and $819.45 in costs.[25]

| Audit (10/1/13–12/31/18) | Unpaid Contributions: | $21,557.10 |
|---|---|---|
| | 20% Liquidated Damages: | $4,315.42 |
| | 5% Interest (through 5/31/19): | $3,745.65 |
| | Testing Fees: | $3,460.50 |
| | Overpayment Credit: | ($3,580.20) |
| | **Subtotal:** | **$29,518.47** |
| | Additional 5% interest (6/1/19 through 3/17/21): | $1,617.04 |
| | 10% Liquidated Damages on Late-Paid 7/18 Contributions: | $150.00 |
| | 5% Interest on Late-Paid 7/18 Contributions: | $0.12 |
| | Attorney's Fees: | $21,118.00 |
| | Costs: | $819.45 |
| | **TOTAL:** | **$53,223.08** |

## 4. Procedural History

The plaintiffs filed the complaint on December 19, 2020.[26] They served the defendant personally on December 27, 2020.[27] The defendant did not respond to the complaint or otherwise appear in the action. The Clerk of Court entered the plaintiffs' default, and they moved for default judgment on September 2, 2020.[28]

On September 22, 2020, the plaintiffs filed a statement that they were working with the defendant to come up with a payment plan and a stipulated judgment.[29] On September 23, 2020, the plaintiffs updated their calculations and submitted a revised proposed judgment.[30] Ultimately,

---

[24] Mot. – ECF No. 48 at 7, 10–11; Christophersen Decl. – ECF No. 49 at 3–5 (¶¶ 9, 13–16); Lindquist Report, Ex. A to Dominguez Decl. – ECF No. 50-1 at 4.

[25] Mot. – ECF No. 48 at 12; Minser Decl. – ECF No. 51 at 7 (¶¶ 23–24).

[26] Compl. – ECF No. 1 at 5 (¶ 15); Mot. – ECF No. 48 at 7.

[27] Proof of Serv. – ECF No. 8.

[28] Entry of Default – ECF No. 15; Mot. – ECF No. 24.

[29] Mot. – ECF No. 30; Mot. – ECF No. 44 at 2 (¶ 2).

[30] Reply – ECF No. 33; Stafford Decl. – ECF No. 34; Am. Proposed J. – ECF No. 35 at 2.

the parties did not resolve the dispute, and the plaintiffs filed a new motion for default judgment.[31] The plaintiffs served the defendant with copies of all documents, including the motion.[32]

All parties consented to magistrate-judge jurisdiction.[33] The court held a hearing on May 6, 2021. The defendant did not appear.

### JURISDICTION, SERVICE, AND VENUE

Before entering default judgment, a court must determine whether it has subject-matter jurisdiction over the action and personal jurisdiction over the defendant. *Tuli v. Republic of Iraq (In re Tuli)*, 172 F.3d 707, 712 (9th Cir. 1999). A court must also ensure the adequacy of service on the defendant. *Timbuktu Educ. v. Alkaraween Islamic Bookstore,* No. C 06–03025 JSW, 2007 WL 1544790, at *2 (N.D. Cal. May 25, 2007).

First, the court has federal-question subject-matter jurisdiction under ERISA and the LMRA. 29 U.S.C. § 1132; 29 U.S.C. § 185; *see* 28 U.S.C. § 1331(a). Second, the court has personal jurisdiction over the defendant. He operated Neighborhood Glass Network, which is a California corporation.[34] Third, the plaintiffs served the defendant personally.[35]

Venue is proper in this district because the Funds are administered in this district, and the Union has its principal place of business in this district.[36] 29 U.S.C. § 1132(e)(2); 29 U.S.C. § 185(a).

### ANALYSIS

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for — and the court may grant — a default judgment against a defendant who has failed to plead or otherwise defend an action. After entry of default, well-pleaded allegations in the complaint

---

[31] Status Report – ECF No. 39; Mot. – ECF No. 44; Mot. – ECF No. 48.

[32] Mot. – ECF No. 48; Proofs of Serv. – ECF Nos. 8, 16, 56, 59.

[33] Consents – ECF Nos. 7 & 41. The plaintiffs filed the defendant's consent to magistrate-judge jurisdiction.

[34] Proofs of Serv. – ECF Nos. 8, 16, 56, 59.

[35] Proof of Serv. – ECF No. 8.

[36] Compl. – ECF No. 1 at 3 (¶¶ 7–8).

regarding liability and entry of default are taken as true, except as to damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir. 1987). The court need not make detailed findings of fact. *Combs,* 285 F.3d at 906. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

"A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans,* 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). The decision to grant or deny a default judgment lies within the court's discretion. *Draper v. Coombs,* 792 F.2d 915, 924–25 (9th Cir. 1986).

In deciding whether to enter a default judgment, the court considers: "(1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect[,] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Mohanna v. Bank of Am., N.A.,* No. 16-cv-01033-HSG, 2017 WL 976015, at *3 (N.D. Cal. Mar. 14, 2017) (cleaned up and quotation omitted).

The *Eitel* factors favor entry of default judgment against the defendant.

### 1. The Possibility of Prejudice to the Plaintiff (First *Eitel* Factor)

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered, and whether such potential prejudice to the plaintiff weighs in favor of granting default judgment. *Eitel,* 782 F.2d at 1471; *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054–55 (N.D. Cal. 2010).

Without a default judgment, the plaintiffs have no recourse to recover the defendant's unpaid contributions. This factor weighs in favor of granting default judgment.

**2.  The Merits and Sufficiency of the Claims (Second and Third *Eitel* Factors)**

The second and third *Eitel* factors consider the merits of the claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. "The Ninth Circuit has suggested that [these factors] require that plaintiffs' allegations 'state a claim on which the [plaintiffs] may recover.'" *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

29 U.S.C. § 1145 states that "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such a plan or such agreement." Section 1145 creates a cause of action against employers who do not make timely contributions that are required under a collective bargaining agreement. *Bd. of Trs. v. RBS Washington Blvd. LLC*, No. C 09–0660 WHA, 2010 WL 145097, at *2 (N.D. Cal. Jan.8, 2010).

The plaintiffs must prove the following: (1) the trusts are multiemployer plans as defined by 29 U.S.C. § 1002(37); (2) the collective bargaining agreements obligated the defendant to make contributions; and (3) he did not make the required contributions. 29 U.S.C. § 1145; *Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Gervasio Env't Sys.*, No. C 03–4858 WHA, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004).

The allegations and declarations set forth by the plaintiffs establish they are multiemployer plans as defined by 29 U.S.C. § 1002(37) and that the defendant breached the bargaining agreements and his statutory duties under ERISA § 515, 29 U.S.C. § 1145, by failing to timely pay contributions. The defendant is an "employer" under ERISA, signed and is a party to the bargaining agreements (and the incorporated trust agreements), owed contributions under the agreements, and is liable under the agreements for the unpaid contributions, liquidated damages, interest, and reasonable attorney's fees and expenses (including the expense of the audit). *Operating Eng'rs' Health & Welfare Tr. Fund. v. Redline Directional, Inc.*, No. 17-cv-07345-JSC, 2019 WL 3782205, at *5–6 (N.D. Cal. July 3, 2019), *report and recommendation adopted*, 2019 WL 3779682 (N.D. Cal. Aug. 12, 2019). These factors weigh in favor of granting default judgment.

United States District Court
Northern District of California

### 3.  The Sum of Money at Stake (Fourth *Eitel* Factor)

The fourth *Eitel* factor considers the amount of money at stake in the litigation. *Eitel*, 782 F.2d at 1471. When the money is substantial or unreasonable, default judgment is discouraged. *Id.* at 1472 (three-million-dollar judgment, considered in light of parties' dispute as to material facts, supported decision not to enter default judgment); *Tragni v. S. Elec. Inc.*, No. C 09-32 JF (RS), 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Bd. of Trs. v. RBS Wash. Blvd., LLC*, No. C 09-00660 WHA, 2010 WL 145097, at *3 (N.D. Cal. Jan. 8, 2010). When the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *Bd. of Trs. of the Sheet Metal Workers Health Care Plan v. Superhall Mech., Inc.*, No. C-10-2212 EMC, 2011 WL 2600898, at *3 (N.D. Cal. June 20, 2011) (the amount of unpaid contributions, liquidated damages, and attorney's fees were appropriate because they were supported by adequate evidence provided by the plaintiffs).

The plaintiffs ask for $53,223.08 in unpaid contributions, liquidated damages, interest, costs, and attorney's fees (plus daily interest starting March 18, 2021 of five percent). This amount is tailored to the defendant's specific misconduct (in the form of his failure to pay contributions) and is supported by evidence in the record. *Bd. of Trs. of the Pac. Coast Roofers Pension Plan v. Fryer Roofing Co., Inc.*, No. 16-CV-02798-LHK, 2017 WL 6539868, at *5 (N.D. Cal. Dec. 21, 2017) (finding fourth *Eitel* factor weighed in favor of default judgment of $2.4 million in ERISA case where "[a]lthough substantial, these sums of actual and statutory damages are tailored to Defendant's 'specific misconduct' of complete withdrawal from the Plan and other damages required under ERISA"). This factor weighs in favor of granting default judgment.

### 4.  Factual Dispute or Excusable Neglect (Fifth and Sixth *Eitel* Factors)

The fifth and sixth *Eitel* factors consider the potential of factual disputes and whether a defendant's failure to respond likely was due to excusable neglect. *Eitel*, 782 F.2d at 1471–72. In *Eitel*, there was a factual dispute and excusable neglect. *Id.* at 1472. The defendant disputed material facts in the (untimely) answer and counterclaim. *Id.* The defendant's response was late because the parties had agreed to "what appeared to be a final settlement agreement," and the

1    defendant "reasonably believed that the litigation was at an end[.]" *Id.* Because of his reasonable

2    reliance and prompt response when the agreement dissolved, there was excusable neglect for his

3    untimely response. *Id.*

4        No facts suggest excusable neglect here. The plaintiffs sent the defendant the audit, gave him an

5    opportunity to dispute it, ultimately obtained more documents from him, served him personally with

6    the lawsuit, sent him copies of all filings, and tried to work with him toward a payment plan. These

7    factors weigh in favor of granting default judgment.

8

9    **5.   The Strong Policy Favoring Decisions on the Merits (Seventh *Eitel* Factor)**

10       The seventh *Eitel* factor is the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at

11   1472. Although default judgment is disfavored, "[t]he very fact that F.R.C.P. 55(b) exists shows

12   that this preference, standing alone, is not dispositive." *Kloepping*, 1996 WL 75314 at *3. "While

13   the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases

14   before the court reaches the merits[,] . . . [as] when a party fails to defend against an action[.]" *Id.*

15       The defendant has not appeared or responded to the lawsuit. Litigation on the merits is not

16   possible. Default judgment is thus appropriate. Fed. R. Civ. P. 55(a); *RBS Wash. Blvd.*, 2010 WL

17   145097, at *4. This factor supports default judgment.

18                                    *        *        *

19       In sum, the *Eitel* factors weigh in favor of default judgment.

20

21   **6.   Relief Sought**

22       The plaintiffs seek $53,223.08 plus daily interest of five percent (starting March 18, 2021).

23       The first issue is whether the plaintiffs gave fair notice of the damages they seek. Under Federal

24   Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in

25   amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The purpose of this rule is to

26   ensure that a defendant is put on notice of the damages being sought against him so that he may

27   make a calculated decision as to whether or not it is in his best interest to answer. *McDonald v.*

28   *Checks-N-Advance, Inc. (In re Ferrell)*, 539 F.3d 1186, 1192–93 (9th Cir. 2008) (rejecting requests

1  for damages and fees because the prayer for relief lacked the "requisite specificity to put defendants

2  on notice that the [plaintiff] sought attorneys' fees and costs on the default judgment"); *Bd. of Trs.*

3  *of the Sheet Metal Workers Loc. 104 Health Care Plan v. Total Air Balance Co., Inc.*, No. 08-2038

4  SC, 2009 WL 1704677, at *4 (N.D. Cal. June 17, 2009) (the defaulting defendant's due process

5  rights were not violated "because the defendant had been served with all of the papers justifying the

6  pension fund's request and leading up to the final determination").

7      In the complaint, the plaintiffs sought damages in the form of (1) unpaid and delinquent trust

8  fund contributions, (2) liquidated damages and interest on these contributions, (3) liquidated

9  damages and interest on late paid contributions, and (4) attorney's fees and costs.[37] Although the

10  complaint did not allege a specific amount in damages, "[c]ourts have awarded damages not

11  specifically mentioned in complaints in ERISA cases where the defaulting defendants were on

12  notice of the post-complaint amounts sought." *Bricklayers Loc. No. 3 Pension Tr. v. Martin*, 13-

13  CV-04293-VC, 2014 WL 1998047, at *3 (N.D. Cal. May 12, 2014) (collecting cases); *accord,*

14  *e.g.*, *Total Air Balance*, 2009 WL 1704677, at *4–5.

15      Here, the complaint gave notice of the defendant's responsibility for unpaid contributions. The

16  auditor and the plaintiffs' counsel sent him the audit and the demand letters before they filed the

17  lawsuit. The motion for default judgment and the supporting documents set forth the relevant

18  calculations. The plaintiffs gave fair notice to the defendant about the damages they seek. *See*

19  *Martin*, 2014 WL 1998047, at *3–4 (in an ERISA case, held that "Plaintiffs are entitled to recover

20  the full scope of damages requested" where "Plaintiffs have kept Defendant apprised of the scope of

21  his alleged liability," "served Defendant by mail with all the filings in this case, including the

22  motion for default judgment and the supplemental [] declaration, a fact that weights in favor of

23  awarding post-complaint damages," and "communicated with Defendant by phone, email, and letter

24  regarding his delinquent contribution reports before and after the complaint was filed"); *Total Air*

25  *Balance*, 2009 WL 1704677, at *5 ("find[ing] it appropriate in this case to consider all damages that

26

27

28  ────────────

[37] Compl. – ECF No. 1 at 6–7 (¶¶ 1–2).

1    had occurred by the time that default was entered against [defendant]" where defendant's continued

2    nonpayment rendered amount of delinquency a "moving target").

3         The second issue is whether the plaintiffs established the amount of their damages. "To recover

4    damages after securing a default judgment, a plaintiff must prove the relief it seeks through

5    testimony or written affidavit." *Bd. of Trs. of the Laborers Health & Welfare Tr. Fund v. A and B*

6    *Bldg. Maint. Co. Inc.*, No. C 13-00731 WHA, 2013 WL 5693728, at *4 (N.D. Cal. Oct. 17, 2013);

7    *accord Cannon v. City of Petaluma,* No. C 11-0651 PJH, 2011 WL 3267714, at *2 (N.D. Cal. July

8    29, 2011) ("In order to 'prove up' damages, a plaintiff is generally required to provide admissible

9    evidence (including witness testimony) supporting damage calculations"); *see Bd. of Trs. of Bay*

10   *Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*, 42 F. Supp. 3d 1220, 1232 n.13 (N.D.

11   Cal. 2014) ("It is Plaintiffs' burden on default judgment to establish the amount of their damages").

12        As set forth in the Statement, the plaintiffs submitted declarations establishing the unpaid

13   contributions, the liquidated damages and interest, and the attorney's fees and costs. The plaintiffs

14   proved the damages and are entitled to them under ERISA:

15        In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce
          section 1145 of this title[38] in which a judgment in favor of the plan is awarded, the court
16        shall award the plan —

17        (A) the unpaid contributions,

18        (B) interest on the unpaid contributions,

19        (C) an amount equal to the greater of —

20        (i) interest on the unpaid contributions, or

21        (ii) liquidated damages provided for under the plan in an amount not in excess of 20
          percent (or such higher percentage as may be permitted under Federal or State law) of the
22        amount determined by the court under subparagraph (A),

23        (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

24        (E) such other legal or equitable relief as the court deems appropriate.

25

26   _____

27   [38] ERISA § 515 provides that "Every employer who is obligated to make contributions to a
     multiemployer plan under the terms of the plan or under the terms of a collectively bargained
     agreement shall, to the extent not inconsistent with law, make such contributions in accordance with
28   the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

### 6.1   Unpaid Contributions, Liquidated Damages, and Interest

Where, as here, the employer is delinquent and the plan provides for it, an award of unpaid contributions, interest, and liquidated damages "is 'mandatory and not discretionary.'" *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (quotation omitted). The plaintiffs are entitled to the unpaid contributions, liquidated damages, and interest.

### 6.2   Audit Fees

The plaintiffs seek $3,460.50 in audit fees. They are entitled to the fees under the bargaining and trust agreements.[39]

### 6.3   Attorney's Fees

The plaintiffs seek $21,118 in attorney's fees. An award of reasonable attorney's fees is mandatory under 29 U.S.C. § 1132(g)(2). *Albertson's*, 104 F.3d at 257. To determine a reasonable fee award in a case like this, federal courts use the lodestar method. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010). The court calculates a "lodestar amount" by multiplying the number of hours counsel reasonably spend on the litigation by a reasonable hourly rate. *Id.*

#### 6.3.1   Reasonable Hourly Rate

A reasonable hourly rate is that prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The relevant community is "the forum in which the district court sits," which here is the Northern District of California. *Camacho*, 523 F.3d at 979. The party requesting fees must produce satisfactory evidence — in addition to the attorney's own affidavits or declarations — that the rates are in line with community rates. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Jordan v.*

---

[39] Mot. – ECF No. 48 at 7; Christopherson Decl. – ECF No. 49 at 4 (¶11); BA1, Ex. A to *id.* – ECF No. 49-1 at 5 (art. 28, § D(3)); BA2, Ex. C to *id.* – ECF No. 49-3 at 5 (art. 28, § D(3)); H&W Trust Agreement, Ex. E to *id.* – ECF No. 49-5 at 9 (¶ III, § D).

United States District Court
Northern District of California

1    *Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987).

2        Here, the motion described the qualifications and hourly rates of attorneys Matthew Minser

3    ($230 through April 1, 2020, $235 through April 30, 2020, and $250 starting May 1, 2020),

4    Michele R. Stafford ($235 through April 30, 2020 and $250 starting May 1, 2020), Luz Mendoza

5    ($230) and Jessica Melgar ($245), and paralegal Nargis Shaghasi ($135 through April 30, 2020

6    and $145 per hour starting May 1, 2020).[40] "Saltzman & Johnson has specialized in the

7    representation of multiemployer, collectively bargained employee benefit plans for over 36 years

8    in both the private and public sectors. Over 90% of its work involves the representation of

9    employee benefit plans. All of the attorneys have extensive experience resolving legal issues

10   pertaining to multiemployer collectively bargained benefit plans which are jointly managed by

11   representatives of labor and management."[41]

12       Based on the submissions and the court's knowledge about prevailing rates, the rates are

13   reasonable. *Cf., e.g.*, *Echague v. Metro. Life Ins. Co.*, 69 F. Supp. 3d 990, 996 (N.D. Cal. 2014)

14   (associate hourly rates of $250 and paralegal hourly rates of $150 are reasonable in an ERISA

15   case); *Reyes v. Bakery & Confectionary Union and Indus. Int'l Pension Fund*, 281 F. Supp. 3d

16   833, 853 (N.D. Cal. 2017) (attorney hourly rates of $200 to $625 and paralegal hourly rates of

17   $125 are reasonable in an ERISA case).

18       ### 6.3.2    Reasonable Hours Expended

19       Reasonable hours expended on a case are hours that are not "'excessive, redundant, or

20   otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)

21   (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). A party must provide detailed time

22   records documenting the tasks completed and the time spent. *Hensley*, 461 U.S. at 437, 440;

23   *McCown*, 565 F.3d at 1102; *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007).

24

25

26

27   ---
     [40] Minser Decl. – ECF No. 51 at 4–6 (¶ 16).

28   [41] *Id.* at 4 (¶ 14).

The plaintiffs request attorney's fees for 69.20 hours of attorney time and 29.40 hours of paralegal time for tasks that include preparing the complaint, accompanying documents, the request for entry of default, the default-judgement documents, and other filings.[42] The hours are reasonable.

*        *        *

In sum, the plaintiffs' submissions establish that the fees are reasonable.

**6.4    Costs of Suit**

The plaintiffs seek $819.45 in costs for the filing fee, service of process, and messenger services to the court for filing of documents.[43] An award of reasonable costs is mandatory under 29 U.S.C. § 1132(g)(2). *Albertson's*, 104 F.3d at 257. The costs are reasonable.

## CONCLUSION

The court grants judgement in favor of the plaintiffs for $53,223.08 (as summarized in the table in the Statement and in the plaintiffs' proposed judgement at ECF No. 52) plus five-percent simple interest on the unpaid contributions from March 18, 2021 until paid.

The court will separately enter the plaintiffs' proposed form of judgment.

**IT IS SO ORDERED.**

Dated: May 6, 2021

_____
LAUREL BEELER
United States Magistrate Judge

---

[42] *Id.* at 6–7 (¶¶ 17–23); Billing Records, Ex. F to Minser Decl. – ECF No. 58 at 1–15.

[43] Mot. – ECF No. 48 at 7; Minser Decl. – ECF No. 51 at 7 (¶ 24).

United States District Court
Northern District of California